# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS RAY THOMPSON, | CASE NO. 1:07-cv-00572-YNP PC |
| Plaintiff, | ORDER DISMISSING CERTAIN CLAIMS |
| v. | (Doc. 31) |
| SCOTT KERNAN, et al., | |
| Defendants. | |

Plaintiff Travis Ray Thompson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation and is incarcerated at the California Correctional Institution in Tehachapi, California. Plaintiff is suing under section 1983 for the violation of his rights under the First, Eighth, and Fourteenth Amendments. For the reasons set forth below, the Court finds that Plaintiff's Third Amended Complaint states a cognizable claim for violation of his Eighth Amendment rights against Defendants Alvarez and Redenius. All other claims in Plaintiff's Third Amended Complaint are dismissed without leave to amend.

**I. Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2).

1  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall
2  dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a
3  claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

4        In determining whether a complaint fails to state a claim, the Court uses the same pleading
5  standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must
6  contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.
7  R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual
8  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me
9  accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v.
10 Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter,
11 accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550
12 U.S. at 570). "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's
13 liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id.
14 (quoting Twombly, 550 U.S. at 557). Further, although a court must accept as true all factual
15 allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.
16 Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory
17 statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

18 **II.     Background**

19     **A.     Procedural Background**

20       Plaintiff filed the Original Complaint in this action on April 13, 2007. (Doc. #1.) Before his
21 Original Complaint was screened by the Court, Plaintiff filed a motion to amend his complaint on
22 July 18, 2007. (Docs. #8.) The Court granted Plaintiff's motion on November 20, 2007. (Doc.
23 #14.) Plaintiff filed his First Amended Complaint on January 2, 2008. (Doc. #17.) Plaintiff's First
24 Amended Complaint was screened by the Court on March 17, 2009. (Doc. #22.) Plaintiff was
25 ordered to either file a Second Amended Complaint or to proceed only on the claims found to be
26 cognizable by the Court. Plaintiff filed his Second Amended Complaint on April 28, 2009. (Doc.
27 #25.) Plaintiff's Second Amended Complaint was screened on June 15, 2009. (Doc. #30.)
28 Plaintiff's Second Amended Complaint was dismissed for failure to comply with Federal Rule of

Civil Procedure 8. Plaintiff was given leave to amend. Plaintiff filed his Third Amended Complaint on July 13, 2009. (Doc. #31.) This action proceeds on Plaintiff's Third Amended Complaint.

### B. Factual Background

Plaintiff's complaint is a chronological narrative of injuries and indignities that he has suffered while in prison. Plaintiff's complaint begins against Defendant Yeager, the state court judge the presided over Plaintiff's criminal trial for assault and battery, whom Plaintiff alleges is liable for convicting Plaintiff and sending him into the custody of the California Department of Corrections and Rehabilitation where he allegedly suffered numerous constitutional injuries. Plaintiff's complaint continues against prison officials that allegedly engaged in a wide-ranging conspiracy aimed at retaliating against Plaintiff for filing lawsuits and inmate grievances that threatened the political interests of the prison guard's union (the California Correctional Peace Officers Association, hereinafter "CCPOA").

Plaintiff's wide-ranging allegations complain of prison officials who deprived Plaintiff of access to legal materials. Plaintiff describes disputes in which Plaintiff would protest prison official misconduct by holding his meal tray or library books hostage until a prison supervisor arrived to negotiate with Plaintiff and provide the relief he sought. Plaintiff would then be charged with a Rules Violation Report ("RVR") for delaying a peace officer, which Plaintiff characterizes as "retaliatory" or "false". Plaintiff also complains that the RVR hearings and determinations are tainted because all the prison officials involved were members of the CCPOA or CCPOA-friendly, and thus held "conflicts of interest." Citing the accumulation of numerous RVRs on Plaintiff's record, the Institutional Classification Committee ("ICC") would in-turn retain Plaintiff in the Secured Housing Unit ("SHU"). Plaintiff claims that his term in the SHU is "indefinite" because of the apparent never-ending cycle of prison official misconduct responded to by Plaintiff holding his meal tray hostage.

Plaintiff's complaint also alleges prison officials engaged in a wide-ranging pattern of misconduct. Plaintiff's complaint alleges that prison officials were censoring his mail. Plaintiff alleges that on one occasion correctional officers deliberately set-up Plaintiff in order to pepper-spray him. Plaintiff claims that a correctional officer interfered with Plaintiff's right of access to the courts

by calling the trust office and telling them to reject Plaintiff's IFP application. Plaintiff complains that prison officials ignored or denied Plaintiff's inmate grievances complaining about staff misconduct. Plaintiff claims that prison officials improperly interfered with Plaintiff's attempts to seek transfer to a federal prison. In sum, Plaintiff's complaint names approximately 73 parties as defendants and alleges that they violated his rights under the First, Eighth, and Fourteenth Amendments.

**III.   Discussion**

   **A.   Claims Arising After Plaintiff Filed This Action (4/13/2007)**

Plaintiff's allegations describe events that occurred after he filed the original complaint in this action. Plaintiff filed the original complaint in this action on April 13, 2007. (Doc. #1.) Plaintiff's factual allegations between paragraphs 80 and 157 of his complaint describe events that took place after April 13, 2007. Plaintiff may not expand the scope of litigation by adding claims regarding events that took place after Plaintiff filed suit. The Prison Litigation Reform Act requires that Plaintiff exhaust his administrative remedies before filing suit. 42 U.S.C. § 1997e(a). Exhaustion must occur prior to filing suit. McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). "[A] prisoner does not comply with [§ 1997e(a)] by exhausting available remedies during the course of litigation." Id. at 1199.

Plaintiff's claims regarding events that occurred after April 13, 2007 were not fully exhausted at the time he initiated this action on April 13, 2007. Plaintiff must exhaust his administrative remedies for those claims and then raise them in a separate lawsuit.

   **B.   Claims Against Defendant Yeager**

Plaintiff names Yeager, a state court judge, as a defendant for his actions in sentencing Plaintiff to CDCR custody. Plaintiff alleges that he was charged with multiple counts of assault and battery and one count of possession of a weapon in prison and that Yeager presided over the trial. Plaintiff complains that Yeager rejected Plaintiff's "political defense" that he was charged by guards because of his anti-CCPOA activities. Plaintiff also complains that Yeager rejected Plaintiff's request for placement in a federal prison and that Yeager is liable for the Eighth Amendment

///

violations that he allegedly suffered while in CDCR custody because Yeager was responsible for placing him in CDCR custody.

"Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction". Pierson v. Ray, 386 U.S. 547, 553 (1967). "This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences.'" Id. at 555 (quoting Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868)). Section 1983 does not abolish the well-settled principle of absolute judicial immunity. It is well-settled that Plaintiff may not sue judge Yeager for actions taken while presiding over Plaintiff's criminal trial.

### C. First Amendment Claims

#### 1. "Right to be Heard"

Plaintiff claims that his First Amendment "right to be heard" was violated on multiple occasions when he received adverse dispositions at RVR hearings, inmate appeal hearings, and ICC meetings. While the First Amendment guarantees the right to free speech, the First Amendment does not guarantee that prison officials or other third parties must listen to and agree with Plaintiff's speech. Plaintiff's First Amendment rights are not implicated when prison officials reject Plaintiff's arguments during ICC meetings, inmate appeals investigations, or RVR hearings. Plaintiff fails to state a claim for violation of his First Amendment "right to be heard".

#### 2. Mail Tampering

Plaintiff alleges that Defendants Steers, Albritton, Burger, Hutchison, Givan, McCurdy, Culpepper, Gray, Gutierrez, Weeks, Sanchez, T. Peterson, Wenciker, Cuaron, Bumbaker, Noyce, Bell, Smith, Pendleton, and John Does 1-7 tampered with, censored, and withheld Plaintiff's mail. (Compl. ¶ 27.) Plaintiff alleges that Defendants tampered with Plaintiff's legal mail with the intent to jeopardize his litigation against the CCPOA and tampered with his mail in retaliation for his inmate appeals and his anti-CCPOA stance at RVR hearings. (Compl. ¶ 27.) Plaintiff claims that Defendants violated his rights under the First Amendment. (Compl. ¶ 27.) Plaintiff alleges that

Defendants Schulteis, Gonzalez, Carrasco, and Sullivan have been "condoning the union's conspiratorial attempts to jeopardize his litigation/support network by censoring/withholding his regular and legal mail." (Compl. ¶ 56.)

Plaintiff does not provide any factual allegations that sufficiently demonstrate that his claims against the above-named Defendants are plausible. Plaintiff bases his claims on the fact that the same conduct was done by guards at another prison institution, indicating that this was a systemwide policy to threaten his litigation. (Compl. ¶ 56.) Plaintiff also claims that he has written numerous letters to family, legal organizations, newspaper editors, and public officials describing the corrupt conditions throughout CDCR. (Compl. ¶ 56.) Plaintiff has not received responses to his letters, "which is highly unlikely", and Plaintiff thus concludes that his mail must be intercepted by Defendants. (Compl. ¶ 57.) Plaintiff's opinion that it was "highly unlikely" that he would not have received responses to his letters had they been sent out, provides no indication that the above-named Defendants stole Plaintiff's mail. Plaintiff does not allege that he has seen his mail being stolen by any of the Defendants. Plaintiff only alleges that the above-named Defendants are the guards that work in the building that he was housed in. Although Plaintiff may have alleged enough to demonstrate that something was happening with his mail, he has not provided sufficient allegations linking the above-named Defendants to any mail tampering. Plaintiff's claims do not cross the line from conceivable to plausible when Plaintiff's only factual allegations supporting his mail tampering claim is the fact that he has not received responses to his mail, and the fact that Defendants work in the same building that Plaintiff is housed in. Plaintiff fails to state a claim against any Defendants for the censorship of his mail.

### D.  Eighth Amendment Claims

Plaintiff claims that his rights under the Eighth Amendment were violated by Defendants. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious", Farmer v. Brennan, 511 U.S. 825,

834 (1994) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991), and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind", <u>Id.</u> (quoting <u>Wilson</u>, 501 U.S. at 298). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities". <u>Id.</u> (quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. <u>Id.</u> (quoting <u>Wilson</u>, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety". <u>Id.</u> at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u>

On June 13, 2006, Plaintiff alleges that he was inappropriately pepper sprayed by Defendants Alvarez and Redenius. (Compl. ¶ 44.) Plaintiff was withholding his breakfast tray in order to seek the attention of prison supervisors so that he could gain access to his legal work. (Compl. ¶ 44.) Alvarez and Redenius responded by kicking Plaintiff's door while falsely accusing Plaintiff of kicking the door so they could justify their use of pepper spray. (Compl. ¶ 44.) Afterwards, Plaintiff was deprived of water decontamination and left to suffer the effects of the spray. (Compl. ¶ 44.) Plaintiff states a cognizable claim against Defendants Alvarez and Redenius for the use of excessive force in violation of the Eighth Amendment.

The remaining allegations in Plaintiff's complaint do not implicate the Eighth Amendment.[1] Plaintiff's allegations involve retention in the SHU, being charged with RVRs, the denial of inmate appeals, the denial of access to legal materials and the law library, and the tampering of Plaintiff's outgoing mail. The conduct alleged is not sufficiently serious enough to be characterized as the "denial of the minimal civilized measure of life's necessities." Therefore, they do not amount to cruel and unusual punishment in violation of the Eighth Amendment.

///

---

[1] The Court does not address the allegations in Plaintiff's complaint that occurred after April 13, 2007, as they are not properly the subject of this lawsuit. <u>See</u> discussion <u>supra</u> Part III.A.

E.      **Fourteenth Amendment Due Process Claims**

Plaintiff asserts various violations of his due process rights. The Due Process Clause protects prisoners from being deprived of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, the minimum procedural requirements that must be met are: (1) written notice of the charges; (2) at least 24 hours between the time the prisoner receives written notice and the time of the hearing, so that the prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so would not be unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the prisoner where the prisoner is illiterate or the issues presented are legally complex. Id. at 563-71. As long as the five minimum Wolff requirements are met, due process has been satisfied. Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994).

1.      **Conflicts of Interest**

Plaintiff claims that his due process rights were violated on numerous occasions when prison officials with "conflicts of interest" were assigned as investigated employees, hearing officers, or other positions related to his RVR hearings and inmate appeals. Plaintiff alleges that prison officials possess a "conflict of interest" when they are members of the CCPOA, or otherwise influenced by the CCPOA's interests. Plaintiff offers no legal support, and the Court is unable to find any legal support, for the proposition that the Due Process Clause is violated when persons possessing

8

"conflicts of interest" investigate Plaintiff's RVRs or are assigned to conduct hearings or interviews regarding Plaintiff's inmate appeals. The Due Process Clause offers only limited protections in the context of prison disciplinary hearings and the inmate appeals process. Access to a non-CCPOA affiliated prison official to investigate Plaintiff's RVRs and inmate appeals is not among the minimal procedural requirements set forth in Wolff. Plaintiff allegations regarding "conflicts of interest" fail to state a claim for violation of the Due Process Clause.

### 2. "False" RVRs

Plaintiff claims that he was issued a number of "false" RVRs. Plaintiff claims that he has a liberty interest in being free from indefinite retention in the SHU and that the "false" RVRs are being used to justify his continued retention in the SHU (which Plaintiff characterizes as "indefinite" because he is apparently unable to refrain from violating prison rules). Plaintiff's own factual allegations demonstrate that the RVRs were not "false". Plaintiff on a number of occasions admits that he engaged in rules violations. On three occasions, Plaintiff admits to withholding his meal tray as a ploy to get the attention of a supervising officer to obtain access to his legal materials and was subsequently charged with RVRs for delaying a peace officer. (Compl. ¶¶ 44-45, 64, 83-85.) On another occasion, Plaintiff admits to refusing to relinquish books to get copies of legal documents and was subsequently charged with an RVR. (Compl. ¶¶ 37-37.) In still another occasion, Plaintiff admits to refusing to sign a logbook and follow orders to leave the law library because he sought the attention of a supervisor and was subsequently charged with an RVR for delaying a peace officer. (Compl. ¶¶ 68-69.) On yet another occasion, Plaintiff refused to go to yard, and refused to cuff up to allow his cell-mate to come back into his cell to "solicit the administration's attention" and was charged with another RVR for delaying a peace officer. (Compl. ¶¶ 79-80.) Plaintiff evidently believes that he has the right to break prison rules for the purpose of gaining access to his legal materials or to solicit the attention of supervisory officials.[2] Thus, when Plaintiff is subsequently

---

[2] Plaintiff's belief that he is entitled to break rules without consequence evidently applies to communication with the courts, demonstrated by his cavalier admission that on one occasion "he had no choice but to send [documents] to the court with a note, making false representation to the court on the proof of service (service was to be made to the Attorney General, and the Director), that could have subjected him to perjury charges." (Compl. ¶ 84.)

9

issued a RVR for his behavior, he characterizes the RVR as "false" because he felt the violation was necessary to gain access to his legal materials, or to complain to a supervisor.

The need for access to legal materials or to speak with a supervisor does not justify Plaintiff's violation of prison rules. Plaintiff apparently believes that "two wrongs make a right". However, even assuming the denial of access to his legal materials rose to the level of a constitutional violation, it does not grant Plaintiff a license to freely violate prison rules. Plaintiff's conclusion that his RVRs are "false" because Plaintiff was justified in violating prison rules in order to gain access to legal materials has no basis in fact or law.

Plaintiff fails to state due process claims against prison officials that issue RVRs against Plaintiff or against prison officials that conduct RVR hearings and find Plaintiff guilty of RVRs. Plaintiff's own allegations demonstrate that he has actually committed rules violations. Although Plaintiff claims that he was deprived certain procedural protections at his RVR hearings, Plaintiff's own allegations suggest that Plaintiff's complaints are questionable or frivolous. Plaintiff complains that interviewers terminated interviews early claiming that Plaintiff was being uncooperative and found Plaintiff's arguments to be irrelevant. The Due Process Clause does not guarantee the right to complete interviews by investigative employees assigned by the prison to investigate rules violations. Further, Plaintiff's own allegations suggest that Plaintiff's defenses were irrelevant, as Plaintiff offers no legal or factual support for his apparent belief that Defendants' misconduct (if any) serves as a valid defense against Plaintiff's rules violations. There is no indication that the exclusion of evidence to prove Plaintiff's defense--that he was forced to violate rules to get access to his legal materials or to get a supervisor's attention--was improper. It is unclear how Defendants' alleged misconduct excuses Plaintiff's misconduct and therefore Plaintiff's evidence was irrelevant. Similarly, Plaintiff's requests for witnesses were denied because their testimony was likely irrelevant. Prohibiting testimony on irrelevant issues is clearly compatible with the procedural guarantees of the Due Process Clause, as Plaintiff has no right to call witnesses to testify on irrelevant issues even in a criminal prosecution setting. See Federal Rules of Evidence 402 ("Evidence which is not relevant is not admissible"). Plaintiff also complains that hearing officers "falsified" his plea, and made adverse credibility determinations against Plaintiff. Plaintiff is not

protected from adverse credibility determinations by the Due Process Clause, and Plaintiff's belief that Defendants "falsified" his plea is without merit as it is clear to the Court that Plaintiff has admitted that he engaged in misconduct and the only controversy present at the RVR hearings was Plaintiff's rejected argument that Defendants' misconduct excuses Plaintiff's misconduct. Plaintiff's claims that his due process rights were violated at his RVR hearings are frivolous.

### 3. ICC Meetings

Plaintiff fails to state due process claims against prison officials at ICC meetings that decide to retain Plaintiff in the SHU based on his numerous RVRs. Plaintiff claims that ICC members retained Plaintiff in the SHU as part of a conspiracy to jeopardize his litigation that threatened CCPOA interests. Plaintiff's allegations of a conspiracy are speculative, implausible, and lack factual support. Plaintiff's own allegations show that Plaintiff was found guilty of multiple RVRs and ICC members retained Plaintiff in the SHU because of Plaintiff's multiple RVRs. Plaintiff's claims that the RVRs were false are without merit. Plaintiff fails to state any claims for due process violations against Defendants for charging him with RVRs and retaining him in the SHU.

### 4. Inmate Appeals

Plaintiff alleges that Defendants denied, ignored, or otherwise improperly handled Plaintiff's inmate appeals complaining about SHU placement, staff misconduct, RVRs, and other conditions of his confinement. Inmates have no liberty interest in the processing of an inmate appeal because inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Because Plaintiff has no separate constitutional entitlement to a specific prison grievance procedure, Plaintiff suffers no constitutional injury when prison officials deny or ignore Plaintiff's inmate appeals. Plaintiff's allegations regarding the handling of his inmate appeals fail to state a claim for violation of his due process rights.

### 5. Other Due Process Claims

Plaintiff alleges that the ICC denied his request to be placed in a federal prison and he appealed. (Compl. ¶ 9.) Defendant Kabban was assigned to interview Plaintiff. (Compl. ¶ 9.) Plaintiff alleges that Kabban "joined the conspiracy" by denying Plaintiff's request despite his

"liberty interest in GP freedom" and mental health issues. (Compl. ¶ 9.) Plaintiff claims that Kabban allowed "political interference to prevent her from completing her assignment" and did not take the appeal process seriously. (Compl. ¶ 9.) Defendant Kabban informed Plaintiff that Defendant Hoffman, a clinician, determined that Plaintiff's medical and psychiatric history did not indicate that his incarceration caused him to be psychotic. (Compl. ¶ 10.) Plaintiff claims that Kabban's actions violated his due process rights. (Compl. ¶ 9.) Plaintiff claims that Defendant Hoffman's actions violated his due process rights because his medical conclusion was not consistent with testimony from other doctors. (Compl. ¶ 11.) Plaintiff does not possess a constitutionally protected liberty interest in federal prison placement. Therefore, Kabban and Hoffman's actions in denying or interfering with Plaintiff's federal prison placement do not implicate the Due Process Clause. Plaintiff's allegations fail to state a cognizable claim for violation of the Due Process Clause of the Fourteenth Amendment.

### F.    Equal Protection Claims

Plaintiff claims that Defendants violated his rights under the Equal Protection Clause by singling him out and discriminating against him for his anti-CCPOA litigation. The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). A plaintiff may establish an equal protection claim by showing that the plaintiff was intentionally discriminated against on the basis of the plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). Under this theory of equal protection, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race. Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir.2005).

However, Plaintiff's claim appears to be based on his membership in a non-protected class-- prisoners who engage in anti-CCPOA litigation. If the action in question does not involve a suspect classification, a plaintiff may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1 (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944

(9th Cir.2004); SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir.2002). To state an equal protection claim under this theory, a plaintiff must allege that: (1) the plaintiff is a member of an identifiable class; (2) the plaintiff was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. Village of Willowbrook, 528 U.S. at 564.

Plaintiff claims that Defendant Soto released a "policy bulletin" to all union members coming into contact with Plaintiff. (Compl. ¶ 16.) The "policy bulletin" called for the union members to meet and discuss "how to deal with him". (Compl. ¶ 16.) Plaintiff claims that Defendant Soto "likely contacted CCPOA's southern region president," presumably to discuss how to treat Plaintiff differently because of his anti-CCPOA activities. (Compl. ¶ 16.) Plaintiff fails to provide plausible factual allegations that suggest he was treated differently because he was litigious. None of Plaintiff's factual allegations plausibly suggest the existence of the policy bulletin. Plaintiff alleges the existence of the policy bulletin upon "information/belief" without providing any factual allegations demonstrating the basis of Plaintiff's belief. There is no allegation that Plaintiff actually saw the policy bulletin, or that someone mentioned the policy bulletin to Plaintiff. Similarly, Plaintiff's empty conclusion that Soto "likely contacted CCPOA's southern region president" is not sufficient to support an equal protection claim. Federal Rule of Civil Procedure 8 requires Plaintiff to provide more than blind conclusions in his complaint to support his claim. Plaintiff fails to state any equal protection claims against any Defendants.

### G. Access to Court Claims

Plaintiff claims that Defendants interfered with Plaintiff's constitutional right of access to the courts. Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures); Vandelft v. Moses, 31 F.3d 794, 796 (9th Cir. 1994); Ching v. Lewis, 895 F.2d 608, 609 (9th Cir. 1989) (per curiam). To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. See Lewis, 518 U.S. at 349. An "actual injury" is "'actual

13

1  prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing
2  deadline or to present a claim.'" Id. at 348. Prisoners do not have a right to a law library. Lewis,
3  518 U.S. at 350. Prisoners have a right of access to the courts and a law library is "merely 'one
4  constitutionally acceptable method to assure meaningful access to the courts'". Lewis, 518 U.S. at
5  351 (quoting Bounds, 430 U.S. at 830)). "[A]n inmate cannot establish relevant actual injury simply
6  by establishing that his prison's law library or legal assistance program is subpar in some theoretical
7  sense." Id. Thus, allegations that a prisoner was denied access to the law library is not sufficient to
8  state a claim for interference with access to the courts. An access-to-courts claim centers around the
9  actual injury a prisoner suffered with respect to contemplated or existing litigation, and not on the
10 fact that the prisoner was denied time in the law library, or was removed from the law library
11 prematurely.

12         The only actual prejudice to any existing or contemplated litigation that Plaintiff alleges is
13 the dismissal of a 9th Circuit appeal based on Plaintiff's belief that Defendant Albritton contacted
14 the "trust office" to have them reject Plaintiff's IFP application. Plaintiff's access to courts claim
15 is not supported by sufficient factual allegations. Plaintiff also appears to make false representations
16 to the Court. Plaintiff claims that Defendant Albritton "is believed to have called the trust office to
17 have them reject Plaintiff's IFP application" in a 9th Circuit case challenging CCPOA policies.
18 (Compl. ¶ 29.) As a result, Plaintiff's appeal was dismissed for failure to pay the filing fee. (Compl.
19 ¶ 31.) Plaintiff's claim that his appeal was dismissed for failure to pay the filing fee is in direct
20 contradiction with his own later allegation that Defendants' actions resulted in the deprivation of a
21 property interest - the $350 filing fee for the appeal. (Compl. ¶ 33.) If Plaintiff's appeal was
22 dismissed because he failed to pay the filing fee, it is unclear how he was deprived of the $350 filing
23 fee. If Plaintiff paid the $350 filing fee, that suggests his appeal was dismissed on other grounds and
24 either Albritton did not contact the trust office to have them reject Plaintiff's IFP application, or
25 Albritton's actions did not cause Plaintiff any injury. In either case, Plaintiff's allegations appear
26 to contradict one another.

27         Aside from the inconsistencies in Plaintiff's factual allegations, Plaintiff fails to provide
28 sufficient factual support for his access to courts claim. Plaintiff fails to offer any factual support

14

1  for his "belief" that Albritton contacted the trust office to have them reject Plaintiff's IFP application.
2  Nor does Plaintiff provide any explanation as to what it means for the "trust office" to reject
3  Plaintiff's IFP application. Normally Plaintiff's IFP application is submitted to the Court and it is
4  the Court that grants or denies IFP status. It is not clear how the "trust office" has any capability to
5  grant or deny IFP status. Plaintiff provides no explanation as to what Albritton or the "trust office"
6  did that resulted in the 9th Circuit rejecting Plaintiff's IFP status, assuming the 9th Circuit did in fact
7  reject Plaintiff's IFP status. Nor does Plaintiff explain why he could not have raised an objection
8  with the 9th Circuit if his IFP status was denied based on misconduct by prison officials. Given the
9  scant factual allegations in support of his access to courts claim, the Court finds that Plaintiff fails
10 to state any access to courts claims against any Defendants.

### H. Claims Against Supervisory Personnel

Plaintiff claims that multiple wardens are liable for the constitutional violations of their subordinates because they have been condoning the CCPOA's attempts to jeopardize Plaintiff's litigation. (Compl. ¶ 17.) Plaintiff claims that Kernan and Sullivan are reluctant to discipline the guards, thereby encouraging them to act against Plaintiff. (Compl. ¶ 17.) Plaintiff claims that it is an apparent policy of administration to protect CCPOA interests by discouraging Plaintiff from challenging his conviction and the corrupt conditions within the department. (Compl. ¶ 18.) Plaintiff claims that Kernan and Sullivan's participation in the conspiracy is seen through their affirmation of the denials of Plaintiff's appeals. (Compl. ¶ 18.) Plaintiff complains that Defendant Kernan and Sullivan's actions violated his due process rights and First Amendment right to be free from retaliation for exercising his right of access to the courts. (Compl. ¶ 18.)

Plaintiff's allegations regarding the "apparent" policy to protect CCPOA are not adequately supported by Plaintiff's factual allegations. As noted in this order, many of Plaintiff's appeals were frivolous and many of the RVRs issued against Plaintiff were justified. Thus the denial of Plaintiff's appeals do not sufficiently demonstrate bias or protectionist behavior by supervisory personnel. The denial of Plaintiff's appeals did not violate Plaintiff's due process rights. See discussion supra Part III.D. Aside from failing to identify the denial of any legitimate protected liberty interest, Plaintiff has not identified what procedural protections he was denied when supervisors denied his appeals.

Nor did the denial of Plaintiff's appeals violate Plaintiff's First Amendment rights. See discussion supra Part III.C.1. Plaintiff does not have a First Amended right to appeal grants. Plaintiff's vague allegations of failure to train subordinates are not sufficient to support any claims against supervisory personnel as Plaintiff has failed to identify with any degree of specificity actions or omissions by any of the named supervisory Defendants that resulted in any constitutional violations. Plaintiff's only valid constitutional claim is his Eighth Amendment use of excessive force claim against Defendants Alvarez and Redenius. Plaintiff does not indicate how the training was deficient, what supervisory personnel did or failed to do that made the training deficient, or how the deficient training could reasonably be said to be the cause of the intentional use of force by Alvarez and Redenius. Plaintiff fails to state any claims against supervisory personnel.

## IV. Conclusion and Order

Plaintiff's Third Amended Complaint states cognizable claims against Defendants Alvarez and Redenius for the use of excessive force against Plaintiff in violation of the Eighth Amendment. Plaintiff's Third Amended Complaint fails to state any other claims against any other Defendants. On two prior occasions the Court screened Plaintiff's complaints and informed him of the deficiencies in his claims and provided Plaintiff with the standards for stating claims under the First, Eighth, and Fourteenth Amendment. Plaintiff was informed that his claims failed to meet the pleading requirements of Federal Rule of Civil Procedure 8. Plaintiff was also informed that he was not permitted to bring new, unexhausted claims regarding events that occurred after he initiated this action. Finally, Plaintiff was previously informed that the doctrine of absolute judicial immunity shields Defendant Yeager from liability for his actions taken while presiding over Plaintiff's criminal trial.

Plaintiff's amended complaints demonstrate that Plaintiff either is not reading the Court's prior screening orders, or is deliberately refusing to address the issues that the Court raises in the prior screening orders. Plaintiff adamantly ignores the Court's guidance and prohibitions in his amended complaints. Plaintiff continues to attempt to bring the same claims that the Court had previously dismissed without providing any new argument or facts that would warrant any reconsideration of their cognizability. Plaintiff continues to raise claims based on insufficient or

implausible factual allegations. Plaintiff continues to attempt to raise new, unexhausted claims regarding events that occurred after Plaintiff initiated this action. Plaintiff continues to raise claims against Defendant Yeager without raising any facts or arguments addressing the Court's prior dismissal of Plaintiff's claims against Yeager based on his absolute judicial immunity. Because of Plaintiff's demonstrated inability to amend his claims in any meaningful way--coupled with Plaintiff's apparent willingness to make factual misrepresentations to the Court in order to obtain the relief that he seeks--the Court finds that Plaintiff's claims are not capable of being cured by further amendment. Because Plaintiff's non-cognizable claims are not capable of being cured by further amendment, the Court orders that this action proceed on Plaintiff's cognizable claims against Defendants Alvarez and Redenius for violation of the Eighth Amendment and that Plaintiff's non-cognizable claims be dismissed without leave to amend. Cf. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (recognizing longstanding rule that leave to amend should be granted if it appears at all possible that the plaintiff can correct the defects in his claims.)

Based on the foregoing, it is HEREBY ORDERED that:

1. That this action proceed on Plaintiff's Third Amended Complaint filed on July 13, 2009 against Defendants Alvarez and Redenius for use of excessive force in violation of the Eighth Amendment; and

2. Plaintiff's remaining claims against other Defendants are dismissed without leave to amend.

IT IS SO ORDERED.

**Dated:   October 5, 2009**         /s/ Sandra M. Snyder
                                    UNITED STATES MAGISTRATE JUDGE